## Minnie D. Kiewert, Appellee, v. Balaban & Katz Corporation, Appellant.

### Gen. No. 32,972.

Heard in the third division of this court for the first district at the October term, 1928. Opinion filed January 30, 1929.

CASSELS, POTTER & BENTLEY, for appellant; RALPH F. POTTER and KENNETH B. HAWKINS, of counsel.

JOHN A. BLOOMINGSTON, for appellee.

MR. JUSTICE WILSON delivered the opinion of the court.

The plaintiff Minnie D. Kiewert brought her action in trespass on the case in the superior court to recover damages for personal injuries sustained while attending a moving picture show at the Tivoli Theatre in Chicago, which was owned and operated by the defendant Balaban & Katz Corporation, a corporation. The trial resulted in a verdict in favor of the plaintiff and judgment was entered upon the verdict, from which this appeal was taken.

The testimony, practically undisputed, shows that plaintiff at the time of the accident in question was 45 years of age and, with her husband, was attending a moving picture show at the Tivoli Theatre on November 21, 1925. She was occupying what is known as an aisle seat, about 10 rows from the front, and her hus-

band was seated immediately upon her right. At the time of the accident the theater was dark, it being a moving picture house, and while the plaintiff was seated, she was suddenly struck upon the head by either a flash light or a swagger stick belonging to an usher in the theater. At the trial the plaintiff and her husband testified that it was a flash light. The usher of the defendant testified that it was a swagger stick about 20 inches long and weighing about 4 ounces. The plaintiff after being struck fell over on her husband's shoulder and the usher standing by said, "I am sorry, Madam, I struck you."

Robert Jackson, the usher employed by the defendant, testified that on the ground floor, upon which the plaintiff was sitting, there were lights located at the end of the seats, about 12 inches from the floor, upon the aisles of the theater, so that a light was thrown upon the floor and that no flash lights were carried by the ushers in this part of the theater, but that flash lights were carried by the ushers in the balcony and upper floors. He testified that at the time of the accident he was holding a swagger stick and had stopped in the aisle, when some people in the rear came in contact with him and pushed the stick from under his arm and, in falling, it struck the plaintiff upon the head and then fell upon the floor; that he then stooped to pick up the stick and told Mrs. Kiewert that he was sorry. The plaintiff then asked for the manager and the witness then procured Mr. Potter, employed by the company, and, together with Mr. Kiewert, they escorted the plaintiff to the office of the manager. Dr. Otto Ludwig was summoned and treated the plaintiff and asked her to return to his office the following morning, which she did, and there he again treated the plaintiff and asked her to return again upon the following Monday, but she did not again return to his office nor did she receive any further treatments from him.

Dr. Ludwig testified that when he examined Mrs. Kiewert in the office of the theater there were no symptoms of anything which he considered serious. He stated there was a barely perceptible amount of swelling, but there was no bleeding or breaking of the skin.

The plaintiff testified that the night after the accident she was nervous and nauseated and vomited during the night; that she was confined to her bed until the latter part of February and during that time was treated by Dr. Leahy, who came every day; that she was compelled to have a nurse during that time; that she has a continuous pain in her head and there appears to be an ever present pressure; that she has suffered continuously from headaches and roaring in both ears and cannot read; that if she takes physical exercise her condition gets worse.

Agnes Collins, a nurse, testified that she attended the plaintiff for the first two weeks after the accident and that plaintiff was in bed and unable to take any nourishment and appeared weak and had a blood discharge from her nose; that she appeared to suffer pain and when asleep would start up suddenly and put her hands to her head.

May Thiers, a witness for the plaintiff testified that she was a nurse and was with the plaintiff for six weeks and that the plaintiff could not help herself nor sit up any length of time and appeared to be semiconscious and subject to dizzy spells.

Mr. Kiewert testified that, after the accident, there was a bump on his wife's head and that he had to assist in nursing his wife for nearly three months and that she had vomiting spells and appeared to be in pain; that before the accident she was in good health and did her own housework and that since the accident she had lost a great deal of weight.

Dr. Leahy, the attending physician, testified that upon his examination, two days after the injury, he found a swelling on the left side of the head at the prominence of the occipital bone; that her eyes were dilated and reacted sluggishly and did not respond to the light test which indicated some disturbance of the brain or the nerve centers; that the plaintiff complained of vomiting and being nauseated; that plaintiff's skull was fractured and that he found a well-marked separation of the frontal and parietal bone; that she suffered from headaches; that he saw her professionally twice a day for the first two months and after that about once a week and thereafter once every two or three weeks, and that she is still under his care.

Dr. Warren W. Fury testified that, from an examination of the X-ray pictures taken of the plaintiff's skull, there were indicated three lines of fracture.

Dr. L. W. Pease, sworn as an expert witness on behalf of the plaintiff, after an examination of the X-ray pictures, testified to the same effect.

On behalf of the defendant, Dr. Edward S. Blaine testified that he was a physician engaged exclusively in X-ray work and that he had examined the X-ray pictures and could find no shadows representing fractures at the vault or base of the skull; that the usual symptom following a skull fracture is unconsciousness, and that such a fracture is usually accompanied by a tear of the scalp; that while it was possible for a patient with a fractured skull to go out to a doctor's office the following day after such an accident, it was unusual; that a characteristic symptom of brain disturbance following a trauma was a drowsy stupid condition.

Dr. Maximillian John Hubeny testified on behalf of defendant that from the X-ray picture the skull appeared to be thick, but still within the maximum limit and that he could find no indication of trauma or fracture of the skull from the picture.

The verdict of the jury was for $15,000 and it was upon this verdict that judgment was entered.

It is insisted on behalf of the defendant that there was no evidence of any negligence on the part of the defendant or its agent which was shown to be the proximate cause of the injury; improper evidence was introduced by the plaintiff tending to show defendant was covered by liability insurance; remarks and conduct of plaintiff's counsel were improper and prejudicial; the trial court erred in permitting plaintiff's attending physician to answer a hypothetical question and give his opinion without confining it to the premises contained in the question; and, that the damages are excessive.

The court instructed the jury to the effect that the defendant was required to exercise ordinary care for the safety of the plaintiff while a patron in its establishment and the case appears to have been tried upon that theory of the law. The owner of a theater is not an insurer, but is liable only upon his failure to use reasonable care to make the premises reasonably safe for the purpose for which they were intended. Under the facts in this case it appears that plaintiff, at the time of the accident, was, herself, in the exercise of ordinary care. The theater at the time of the accident was dark; plaintiff, without any warning, suddenly received a blow upon the head from either a swagger stick or a flash light in the hands of an usher, an employee of the defendant company. So far as we can see the question as to whether it was a flash light or a swagger stick is immaterial. It is admitted that she was struck. The plaintiff was unable to adduce any evidence, other than the facts stated.

When a thing which has caused an injury is shown to be under the management of the party charged with negligence, and the accident is such as in the ordinary course of things will not happen if those who have such

management use proper care, the accident itself affords reasonable evidence, in the absence of an explanation by the parties charged, that it arose from the want of proper care. *Feldman v. Chicago Rys. Co.,* 289 Ill. 25; *Sheets v. Star Cleaners & Dyers, Inc.,* 238 App. 323; *Walsh v. Moore,* 244 Ill. App. 458.

It is not necessary that a relationship of carrier and passenger exists in order to create such a presumption of negligence. Where a person is in the exercise of due care for his own safety and is injured by instrumentalities under the control of another, and the injury is inexplicable except on the hypothesis of negligence, a prima facie case is created and the law places the burden upon those in control of the instrumentalities to explain the cause of the accident and to show that they are free from negligence.

The court in the case of *Sheets v. Star Cleaners & Dyers, Inc.,* hereinbefore referred to, in its opinion says:

"This being undisputed, it is self-evident that such accidents did not ordinarily occur and the rule of law in this State in such cases that proof of an injury to person or property occurring as the proximate result of an act, which under ordinary circumstances would not, if done with due care, have injured any person or property, is enough to make out a presumption of negligence. And this is held to be the rule, even where no special relationship like that of passenger and carrier exists."

It is urged on behalf of the defendant that the accident was caused by some one coming in contact with or crowding or bumping against its employee, as a result of which he was thrown against the plaintiff. It is insisted that the accident, therefore, was caused by a third person, but this argument presupposes the fact that the defendant was not negligent in preventing such a situation or occurrence. Negligence may con-

sist in permitting an overcrowding of aisles in theaters or the rushing in of patrons so as to cause confusion and accidents.

The jury was clearly and fully instructed on behalf of the defendant on this theory of the case and, by their verdict, found that the defendant was not relieved from liability by reason of the facts adduced by the defendant in support of this contention and we see no reason for disturbing the judgment on this ground.

Dr. Otto Ludwig, who treated the plaintiff immediately after the accident, was asked on cross-examination as to who paid him for the services and answered, "the Zurich Insurance Company." No objection appears to have been made at the time nor was an exception taken to the answer; nor can we see any reason why the witness might not be asked, as it might have a bearing on the credibility given his testimony if it should appear that he had been paid by or on behalf of the defendant. It is insisted also that other remarks made by counsel for the plaintiff were prejudicial, but we have examined the record and find that the trial court ruled properly upon objection to such remarks and that they were stricken out and the jury was specifically instructed by the court that they should not take into account or be influenced by any statement, denunciation or insinuation of counsel, unless based upon the evidence, and that any evidence which had been stricken out, or any argument of counsel to which objection had been sustained by the court, should be totally disregarded and treated as if it had never been heard by the jury. We cannot say that the remarks and the attitude of counsel, under the circumstances, were such as to create a condition of prejudice in the minds of the jury as would result in reversible error.

Dr. J. E. Leahy was asked on direct examination if he had an opinion from a medical and surgical point of view as to whether or not there was sufficient in the accident, described in the hypothetical question, to

bring about the symptoms and conditions stated therein to exist, to which he replied that he did. On further questioning he stated that in his opinion it would bring about the condition. Upon cross-examination he was asked whether or not he included in his answer to the hypothetical question his own observations from personal attendance upon the plaintiff, and he stated that he did. Counsel for the defendant then moved to have the answer stricken, which was overruled. The witness was the attending physician and a great many statements contained in the hypothetical question were based upon his testimony. When the hypothetical question was put to him it necessarily contained a large number of statements of fact concerning the condition of the plaintiff to which he, himself, had testified. It was not unreasonable nor illogical for the witness to answer that some of his own observations from personal attendance upon the plaintiff were included in his answer to the hypothetical question. To some extent his statements prior to the answer to the hypothetical question were based upon things that were told him by the plaintiff as to her condition, subjective in their nature.

It is well settled in this State that an attending physician may, in forming his opinion as to the cause of a patient's bodily condition, consider and be guided by statements made to him by the patient, although these statements are purely subjective. The rule is otherwise as to statements made to an expert who examines merely for the purpose of testifying. *Devine v. Rothschild,* 178 Ill. App. 13.

The cross-examination developed the fact that Dr. Leahy's answer to the hypothetical question was based, in part, upon his own observations while attending physician, and the jury had this fact before it in considering his answer to the hypothetical question. Under the circumstances we are of the opinion that the court did not err in refusing to strike the answer to

the hypothetical question, although it would have been advisable to have had the hypothetical question again stated to the witness under proper instructions that he was to consider only the facts related in the hypothetical question and to disregard any opinions he may have formed while treating the patient as attending physician.

The Supreme Court of this State in the case of *Greinke v. Chicago City Ry. Co.*, 234 Ill. 564, in its opinion says:

"The testimony of Dr. Cox was therefore corroborative and cumulative of facts and conditions which had been clearly established by other competent evidence. In *West Chicago Street Railroad Co. v. Maday*, 188 Ill. 308, on page 310, it was said: 'When the court can see from the record that an error committed by the trial court in the progress of the case was a harmless one, or that its injurious effect or harmful character was obviated, so as not to affect injuriously, in the final judgment, the rights of the party against whom the error was committed, it should not be allowed to work a reversal. It is more important in the administration of justice that litigation should end in the attainment of substantial justice than that a record of the proceedings should be built up which is without flaw or blemish.'"

It is insisted that the damages in this case are excessive. The condition of the plaintiff resulting from the accident, as testified to by herself and the witnesses on her behalf, appears to be serious. It is, in fact, unusual that such a condition could arise by being struck on the head, either by a flash light or a swagger stick, but it is not improbable. The testimony on behalf of the plaintiff, standing alone, unquestionably shows a condition of serious impairment, both physically and mentally to the plaintiff. The jury and the trial court

had an opportunity to see and hear the witnesses and to observe the plaintiff and her condition while upon the stand. This opportunity is denied a court of appeal, reviewing the case upon the record, abstract and briefs. While the verdict may appear to be large, we are disinclined to hold that it is excessive and we are, moreover, disinclined to substitute our opinion as to the extent of the damages for that of the trial court and jury.

For the reasons stated in this opinion the judgment of the superior court is affirmed.

*Judgment affirmed.*

Holdom, P. J., and Ryner, J., concur.